UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAPHENE C. ADAMSON-JAMES,

          Plaintiff,

v.                                        Case No:  6:11-cv-628-Orl-36TBS

FLORIDA DEPARTMENT OF
CORRECTIONS, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS, EDITH DECICCO,
BARBARA SCALA, and JOHN DOES 1
- 10,

          Defendants.
_____

## ORDER

This cause comes before the Court on two motions to dismiss Plaintiff Daphene C. Adamson-James' ("Plaintiff") Third Amended Complaint:  (1) Defendants Florida Department of Corrections ("FDOC") and former Secretary of the FDOC, Edwin G. Buss' ("FDOC Secretary") Amended Motion to Dismiss ("FDOC's Motion to Dismiss") (Doc. 67); and (2) Defendants Edith DeCicco ("Defendant DeCicco") and Barbara Scala's ("Defendant Scala") Amended Motion to Dismiss ("Individual Defendants' Motion to Dismiss") (Doc. 68).[1]  Plaintiff filed responses in opposition to the Motions to Dismiss (Docs. 76, 77).  On April 2, 2013, the Court held a hearing on the Motions to Dismiss, and heard argument of counsel for Plaintiff and Defendants.  *See* Doc. 95.  At the hearing, the Court entered an Oral Order granting in part and denying in part the Motions to Dismiss, as set forth on the record, while also deferring a ruling

---

[1] The FDOC, the FDOC Secretary, Defendant DeCicco and Defendant Scala are collectively referred to as "Defendants."  The FDOC's Motion to Dismiss and the Individual Defendants' Motion to Dismiss are collectively referred to as the "Motions to Dismiss."

on certain other issues in the Motions to Dismiss.  *See* Doc. 96.  This Order addresses those unresolved issues.

## I.      BACKGROUND

### A.      The Third Amended Complaint

On August 3, 2012, following the Court's dismissal of Plaintiff's Second Amended Complaint (Doc. 59), Plaintiff filed a 97-page Third Amended Complaint against the FDOC, the FDOC Secretary in his official capacity, and Defendants DeCicco and Scala in their official and individual capacities (Doc. 62).   Plaintiff's Third Amended Complaint asserts the following claims:   (1) Count One – violation of Plaintiff's right to free speech under the First and Fourteenth Amendments (all Defendants); (2) Count Two – violation of substantive due process under Fla. Stat. §§ 112.532 and 112.533 (all Defendants); (3) Count Three – violation of procedural due process under Fla. Stat. §§ 112.532 and 112.533 (all Defendants); (4) Count Four – gender discrimination in violation of Title VII of the Civil Rights Act of 1964 (FDOC); (5) Count Five – violation of the interference provisions of the Family Medical Leave Act ("FMLA") (FDOC); (6) Count Six – violation of Fla. Stat. § 110.221, Florida's parental and family medical leave statute (all Defendants); (7) Count Seven – violation of Florida's "Whistle-blower's Act", Fla. Stat. § 112.3187 (FDOC); (8) Count Eight – violation of Florida's "Whistle-blower's Act", Fla. Stat. § 112.31895 (all Defendants); (9) Count Nine – sexual discrimination in violation of the Florida Civil Rights Act ("FCRA") (FDOC); (10) Count Ten – retaliation on the basis of gender in violation of the FCRA (FDOC); (11) Count Eleven – violation of Americans with Disabilities Act and its amendments (FDOC); (12) Count Twelve – retaliation on the basis of disability in violation of the FCRA (FDOC); (13) Count Thirteen – violation of the retaliation provisions of the FMLA (FDOC); (14) Count Fourteen – violation of Plaintiff's

right to substantive due process under the Fourteenth Amendment (all Defendants); (15) Count Fifteen – violation of Plaintiff's right to procedural due process under the Fourteenth Amendment (all Defendants); (16) Count Sixteen – violation of 42 U.S.C. § 1983 for failure to investigate (all Defendants); and (17) Count Seventeen – violation of 42 U.S.C. § 1983 for refusal or neglect to prevent violation of civil rights (all Defendants). Doc. 62. These claims arise from Plaintiff's employment with the FDOC from November 13, 1987 through the date of her termination, May 28, 2010. *See id.* at ¶¶ 30–45.

### B.    The Court's Rulings on the FDOC's Motion to Dismiss

For the reasons stated on the record, the Court in its Oral Order granted the FDOC's Motion to Dismiss as to Counts One through Three, Five through Ten, and Twelve through Seventeen. *See* Unofficial Transcript, p. 41. As the FDOC Secretary has no Counts remaining against him, he will be terminated as a party to this case.

The Court denied the FDOC's Motion to Dismiss as to Count Four, except that it granted the Motion to the extent that the Motion seeks to prevent Plaintiff from pursuing punitive damages. *See id.* at 41, 66. The Court deferred ruling as to Count Eleven. *See id.* at 41. As a result, Counts Four and Eleven are the only Counts remaining against the FDOC. Count Eleven is addressed in this Order.

### C.    The Court's Rulings on the Individual Defendants' Motion to Dismiss

For the reasons stated on the record, the Court in its Oral Order granted the Individual Defendants' Motion to Dismiss as to Counts Fourteen,[2] Sixteen, and Seventeen. *See id.* at 58, 63, 64. The Court also dismissed Count Six to the extent it was asserted against Defendants DeCicco and Scala in their individual, and not official, capacities. *See id.* at 51–53, 64.

---

[2] Count Fourteen was dismissed as duplicative of Count One. *See id.* at 58, 64.

The Court denied the Individual Defendants' Motion to Dismiss as to Counts One and Fifteen to the extent they were asserted against Defendants DeCicco and Scala in their individual, and not official, capacities.  *See id.* at 56–57, 61, 64.  The Court deferred ruling as to Counts Two, Three, and Eight.  *See id.* at 64.  As a result, the Counts remaining against Defendants DeCicco and Scala are:  (1) Count One (in their official and individual capacities); (2) Count Two (in their official and individual capacities); (3) Count Three (in their official and individual capacities); (4) Count Six (in their official capacities); (5) Count Eight (in their official and individual capacities); and (5) Count Fifteen (in their official and individual capacities).  Each of those Counts is addressed in this Order.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere naked assertions, too, are not sufficient.  *Id*.  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.  Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

## III.     DISCUSSION

### A.     The FDOC's Motion to Dismiss

As explained in Part I.B, *supra*, Count Eleven is the only claim which the Court has yet to rule on with respect to the FDOC.  In Count Eleven, Plaintiff alleges that the FDOC violated Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by discriminating against her due to a medical condition she developed as a result of an allegedly hostile workplace.  Doc. 62, ¶¶ 226–74.  The FDOC argues that Plaintiff's ADA claim is barred by the State of Florida's immunity from suit under the Eleventh Amendment of the United States Constitution.  Doc. 67, pp. 6–10.  In reply, Plaintiff asserts that:  (1) the ADA Amendments Act of 2008 ("ADAAA") abrogated the States' immunity from suits under Title I of the ADA; and (2) the State of Florida has waived its Eleventh Amendment immunity.  Doc. 76, pp. 16–18, 21–28.

The Eleventh Amendment preserves the immunity of the States from suit by private persons in federal court without the State's consent.  *Virginia Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637–38 (2011).  A State's Eleventh Amendment immunity extends to "arms of the State," such as the State agency at issue here, the FDOC.  *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429–30 (1997).  "A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."  *Stewart*, 131 S. Ct. at 1638 (internal citations omitted).  The Court must therefore consider whether Florida's Eleventh Amendment immunity from suits under Title I of the ADA has been abrogated or waived.

> *1.  Florida's Eleventh Amendment Immunity Has Not Been Abrogated by Title I of the ADA or by the ADAAA*

Plaintiff first argues that Florida's Eleventh Amendment immunity has been abrogated by Title I of the ADA and by the ADAAA.  Doc. 76, pp. 16–18.  Congress may abrogate the States' Eleventh Amendment immunity only when it (1) expresses an unequivocal intent to do so and (2) acts pursuant to a valid grant of constitutional authority.  *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).  Following the United States Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, Section 5 of the Fourteenth Amendment is the only valid grant of constitutional authority by which Congress may abrogate the States' Eleventh Amendment immunity.  *Seminole Tribe*, 517 U.S. 44, 73 (1996); *see also Garrett*, 531 U.S. at 364; *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000).  In deciding whether Congress has acted pursuant to a valid grant of constitutional authority under Section 5 of the Fourteenth Amendment, the Supreme Court has adopted a three-step analysis:  (1) determine the scope of the constitutional right that Congress sought to enforce when it enacted the legislation; (2) determine whether there was a history of unconstitutional discrimination to support Congress' determination that prophylactic legislation was necessary; and (3) determine whether the legislation is an appropriate response to this history and pattern of unequal treatment.  *Ass'n for Disabled Americans, Inc. v. Florida Int'l Univ.*, 405 F.3d 954, 957 (11th Cir. 2005) (citing *Garrett*, 531 U.S. at 365–70; *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997)).

In *Garrett*, the Supreme Court addressed whether Title I of the ADA was a valid abrogation of the States' Eleventh Amendment immunity.  The Court recognized that the first prong of the test for valid abrogation had been satisfied, as Congress had unequivocally expressed its intent to abrogate by providing that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or

State court of competent jurisdiction for a violation of [the ADA]." *Garrett*, 531 U.S. at 364 (citing 42 U.S.C. § 12202).

The Court then turned to the second prong, examining whether Congress had validly exercised its power under Section 5 of the Fourteenth Amendment. *Id.* at 364. The Court observed that it was first required to "identify with some precision the scope of the constitutional right at issue" by examining the limitations that Section 1 of the Fourteenth Amendment placed on the States' treatment of the disabled. *Id.* at 365. The Court reiterated its holding from *Cleburne v. Cleburne Living Center, Inc.*, that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Id.* at 367 (citing *Cleburne*, 473 U.S. 432 (1985)). Having determined the scope of the constitutional right in question, the Court next analyzed whether Congress had identified a history and pattern of unconstitutional employment discrimination by the States against the disabled. *Id.* at 368. The Court concluded that the "legislative record of the ADA . . . simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." *Id.* Finally, the Court found that the remedy imposed by Congress in response to the alleged discrimination against the disabled was not congruent and proportional to the targeted violations. *Id.* at 372–74. Accordingly, the Court determined that Congress had not acted pursuant to a valid grant of constitutional authority, and held that Title I of the ADA did not abrogate the States' Eleventh Amendment immunity from suits for money damages. *Id.* at 360, 374.

The Court's decision in *Garrett* would appear to bar Plaintiff's ADA claim. Plaintiff, however, argues that the ADAAA, signed into law in 2008, seven years after the decision in

*Garrett*, effectively abrogated the States' Eleventh Amendment immunity from suits under Title I of the ADA.  Doc. 76, pp. 16–18.  The Court disagrees.

The ADAAA, among other things, amended the definition of "disability" and certain others terms in the ADA.  *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.  Congress enacted the ADAAA with the express purpose of rejecting the holdings of several Supreme Court cases interpreting the statutory provisions of the ADA.  *Id*.  Notably, while the ADAAA's legislative findings specifically identify those holdings which Congress sought to address, they do not mention *Garrett* or the States' Eleventh Amendment immunity. *See id*.  Nor do the findings identify any pattern of unconstitutional behavior by the States toward the disabled.  *See id.*  Thus, even though Congress' unequivocal abrogation language in 42 U.S.C.A. § 12202 remains in place, Congress has not remedied the deficiencies identified in *Garrett* with respect to developing a record of a pattern of irrational State discrimination against the disabled.  *Garrett*, 531 U.S. at 371 ("…had Congress truly understood this information as reflecting a pattern of unconstitutional behavior by the States, one would expect some mention of that conclusion in the Act's legislative findings."); *accord Goodnow v. Oklahoma Dept. of Human Services*, 11-CV-54-GKF-FHM, 2011 WL 4830183, at *1 (N.D. Okla. Oct. 12, 2011) ("[T]he ADAAA is devoid of language purporting to negate the constitutional limitation upon the authority of Congress to abrogate state sovereign immunity recognized in *Garrett*."). Moreover, there is nothing in the ADAAA or its legislative history which would warrant a departure from the *Garrett* Court's conclusion that the remedies imposed by the ADA are not "congruent and proportional" to the targeted violations.  *See Garrett*, 531 U.S. at 372–74. Accordingly, this Court cannot find that Title I of the ADA, as amended by the ADAAA, is a constitutionally valid abrogation of the States' Eleventh Amendment immunity from suits for

money damages.  *Accord Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 832 (E.D. La.

2012) (holding that the ADAAA does nothing to disturb the *Garrett* Court's conclusion that Title

I of the ADA does not abrogate the States' Eleventh Amendment immunity); *Goodnow*, 2011

WL 4830183, at *1 (same).

>  **2.   *Florida Has Not Waived Its Eleventh Amendment Immunity from Suits under Title I of the ADA***

Plaintiff next argues that Florida has waived its Eleventh Amendment immunity by virtue

of:  (1) its ratification of the Fourteenth Amendment; (2) its acceptance of federal funding; (3) a

report issued by a Florida Senate committee; and (4) a collective bargaining agreement with the

Florida Police Benevolent Association.  Doc. 76, pp. 21–28.  Plaintiff cites almost no applicable

authority for these arguments, and the Court finds them to be without merit.

The test for determining whether a State has waived its immunity is a "stringent one."

*Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (U.S. 2011) (internal citations and quotations omitted).

A State's consent to suit must be "unequivocally expressed" in the text of the relevant statute.

*Id.* (internal citations omitted).  "Waiver may not be implied…" and is "strictly construed, in

terms of its scope, in favor of the sovereign." *Id.* (internal citations and quotations omitted).

Florida's waiver of sovereign immunity is contained in Fla. Stat. § 768.28.  *Brown v.*

*Jenne*, 941 So. 2d 447, 449 (Fla. 4th Dist. Ct. App. 2006).  That statute provides:

> In accordance with s. 13, Art. X of the State Constitution, the state, for itself and
> for its agencies or subdivisions, hereby waives sovereign immunity for liability
> for torts, but only to the extent specified in this act.  Actions at law against the
> state or any of its agencies or subdivisions to recover damages in tort for money
> damages against the state or its agencies or subdivisions for injury or loss of
> property, personal injury, or death caused by the negligent or wrongful act or
> omission of any employee of the agency or subdivision while acting within the
> scope of the employee's office or employment under circumstances in which the
> state or such agency or subdivision, if a private person, would be liable to the
> claimant, in accordance with the general laws of this state, may be prosecuted
> subject to the limitations specified in this act.

Fla. Stat. § 768.28(1).  The Florida Supreme Court has held that the waiver contained in § 768.28

is limited solely to state tort actions.  *Hill v. Dep't of Corr., State of Florida*, 513 So. 2d 129, 133

(Fla. 1987); *see also Brown*, 941 So. 2d at 451 (acknowledging that "*Hill* is still good law as to

the sovereign immunity of the state and its agencies. . . .").  Florida's waiver statute further

provides:

> No provision of this section, or of any other section of the Florida Statutes,
> whether read separately or in conjunction with any other provision, shall be
> construed to waive the immunity of the state or any of its agencies from suit in
> federal court, as such immunity is guaranteed by the Eleventh Amendment to the
> Constitution of the United States, unless such waiver is explicitly and definitely
> stated to be a waiver of the immunity of the state and its agencies from suit in
> federal court.

Fla. Stat. § 768.28(18).  Plaintiff has failed to cite any statute purporting to waive Florida's

Eleventh Amendment immunity with respect to ADA claims.  Accordingly, there is no basis for

finding that immunity has been statutorily waived.

Plaintiff's assertion that a State *entirely waives* its Eleventh Amendment immunity

through its adoption of the Fourteenth Amendment is without precedent.  Congress may indeed

*abrogate* the States' Eleventh Amendment immunity pursuant to a *valid* exercise of its

Fourteenth Amendment enforcement authority, but as the Court has explained in Part III.A.1,

there was no valid abrogation with respect to Title I of the ADA.

Nor has Florida constructively waived its sovereign immunity by accepting federal

funding.  Plaintiff alleges that Florida has accepted federal funds that were issued pursuant to the

Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16911 *et seq.*, for

compliance with SORNA's monitoring requirements.  Doc. 76, pp. 22–24.  Plaintiff asserts that

this acceptance of federal funds somehow waives Florida's immunity from suits under the ADA.

*Id.*  However, "the mere receipt of federal funds cannot establish that a state has consented to

suit."  *Rizo v. Alabama Dept. of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (quoting

10

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246–47 (1985)).  Rather, the relevant statute must manifest "a clear intent to condition participation in the programs funded under the [statute] on a State's consent to waive its constitutional immunity." *Atascadero*, 473 U.S. at 247.  Here, Plaintiff has failed to point to any waiver provision in SORNA, and even if she did, she has failed to show why this should amount to a waiver under the ADA.

Plaintiff next points to a "report" issued by the Florida Senate's Committee on Governmental Oversight & Productivity in 2002, titled "Review of Sovereign Immunity in Florida" ("Report").  Doc. 76, pp. 24–25 (citing Report, *available at* http://archive.flsenate.gov/data/Publications/2003/Senate/reports/interim_reports/pdf/2003-131go.pdf).  The Report identifies the "public duty doctrine" as an exception to Florida's waiver of immunity in tort cases under Fla. Stat. § 768.28.  Report, p. 3.  The Report states that under the public duty doctrine, "the government may not be liable unless there is a statutory or common law duty of care in existence that would have been applicable to an individual under similar circumstances." *Id.* (citing *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 917 (Fla. 1985)).  Plaintiff attempts to extrapolate from this statement that Plaintiff "was owed a duty of care by [the FDOC] to safeguard her health and welfare," and that by breaching this duty, the FDOC has somehow waived its sovereign immunity.  Doc. 76, p. 25.  This attenuated argument is completely without merit.  First, the "Report" is merely a summary of the law of sovereign immunity in the State of Florida, and has no ability to bind this Court.  Second, the public duty doctrine, to the extent valid, merely operates as an exception to Florida's waiver of immunity, and only applies in tort actions. *See Trianon Park*, 468 So. 2d at 917.

Plaintiff's final argument for waiver is also unavailing.  Plaintiff asserts that by entering into a collective bargaining agreement with the Florida Police Benevolent Association, the State

waived its immunity.  Doc. 76, pp. 26–28.  Among other things, Plaintiff points to language in the agreement stating that "[t]he Association agrees to support the State's current affirmative action programs and efforts to comply with the Americans with Disabilities Act."  *Id.* at 27.  This provision is far from the unequivocal language needed to waive immunity.  *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'").

Accordingly, the Court finds that Florida has not waived its Eleventh Amendment immunity from suits for money damages under Title I of the ADA.  Because there has been no waiver or abrogation, the FDOC is immune from suits for money damages under Title I of the ADA.  Nor is injunctive or declaratory relief proper under *Ex parte Young*, 209 U.S. 123 (1908). That case provides a "narrow" exception to the States' Eleventh Amendment immunity in actions where a party is seeking prospective relief against State officials for violations of federal law.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). However, the *Ex parte Young* exception "has no application in suits against the States *and their agencies*, which are barred regardless of the relief sought."  *Id.* (internal citations omitted) (emphasis added).  As all forms of relief under Title I of the ADA are barred by Florida's Eleventh Amendment immunity, the Court will dismiss Plaintiff's ADA claim (Count XI) entirely.

## B.    The Individual Defendants' Motion to Dismiss

Plaintiff sued Defendants DeCicco and Scala in both their individual and official capacities.  As explained in Part I.C, *supra*, the Counts remaining against Defendants DeCicco and Scala are:  (1) Count One (in their official and individual capacities); (2) Count Two (in their

official and individual capacities); (3) Count Three (in their official and individual capacities); (4) Count Six (in their official capacities); (5) Count Eight (in their official and individual capacities); and (5) Count Fifteen (in their official and individual capacities).

       *1.   Counts Two and Three Fail to State a Cause of Action under LEOBOR*

In Count Two, Plaintiff alleges that Defendants DeCicco and Scala deprived her of her right to free speech by subjecting her to disciplinary action after she filed whistleblower complaints.  Doc. 62, ¶¶ 77–103.  Plaintiff asserts that this deprivation was a violation of her substantive due process rights under Florida's Law Enforcement Officers' Bill of Rights ("LEOBOR").  *Id.* at ¶¶ 77–103.  In Count Three, Plaintiff alleges that her procedural due process rights under these statutes were violated because Defendants DeCicco and Scala failed to follow the proper disciplinary procedures.  *Id.* at ¶¶ 104–110.  Defendants DeCicco and Scala argue that LEOBOR does not provide a private cause of action for complaints filed by correctional officers under LEOBOR.  Doc. 68, pp. 2–4.  Plaintiff disagrees, arguing that LEOBOR's plain language, as well as its recent legislative amendments, support a private cause of action.  Doc. 77, pp. 6–9.

LEOBOR, codified at Fla. Stat. §§ 112.531–112.535, sets forth the exclusive procedures to be followed by law enforcement and correctional agencies for investigation of complaints filed against law enforcement and correctional officers.  *Demings v. Orange County Citizens Review Bd.*, 15 So. 3d 604, 607 (Fla. 5th Dist. Ct. App. 2009).  "Correctional officers" include correctional probation officers, such as Plaintiff.  *See* Fla. Stat. §§ 112.531(2), 943.10(3).  Fla. Stat. § 112.532(3) provides:

> **Civil suits brought by law enforcement officers or correctional officers.**-- Every law enforcement officer or correctional officer shall have the right to bring civil suit against any person, group of persons, or organization or corporation, or the head of such organization or corporation, for damages, either pecuniary or

otherwise, suffered during the performance of the officer's official duties, for abridgment of the officer's civil rights arising out of the officer's performance of official duties, or for filing a complaint against the officer which the person knew was false when it was filed.  This section does not establish a separate civil action against the officer's employing law enforcement agency for the investigation and processing of a complaint filed under this part.

While this provision would appear to grant Plaintiff an avenue for relief, Florida courts have repeatedly acknowledged that LEOBOR only applies to complaints made against a law enforcement or correctional officer by persons *outside the agency which employs the officer.  See McQuade v. Florida Dep't of Corr.*, 51 So. 3d 489, 493 (Fla. 1st Dist. Ct. App. 2010) ("[T]he LEO Bill of Rights does not apply to investigations initiated by a complaint that originates from within the agency that employs the officer under investigation."); *Kelly v. Gill*, 544 So. 2d 1162, 1165 n.5 (Fla. 5th Dist. Ct. App. 1989) ("[I]t would appear that all of [LEOBOR] deals specifically with investigations, complaints, and disciplinary action as a result of claims made against an officer by persons outside the agency which employs him."); *City of Miami v. Cosgrove*, 516 So. 2d 1125, 1129 (Fla. 3d Dist. Ct. App. 1987) (". . . Section 112.532(3) . . . as we read it, has nothing whatsoever to do with the employee's rights vis-a-vis his employer but simply memorializes that a policeman shall have the right to sue *other persons* for damages suffered by the officer *in the performance of his official duties*."); *Migliore v. City of Lauderhill*, 415 So. 2d 62, 64 (Fla. 4th Dist. Ct. App. 1982), *approved*, 431 So. 2d 986 (Fla. 1983) ("We interpret the statute as providing a law enforcement officer with a means of vindicating his actions and his reputation against unjust and unjustifiable claims made against him by persons outside the agency which employs him.").  Here, it is undisputed that the complaints against Plaintiff originated from within the FDOC.  *See* Doc. 62, ¶¶ 77–110.

Moreover, courts have repeatedly held that the exclusive remedy for violations of § 112.532 is injunctive relief in state circuit court pursuant to § 112.534; claimants may not pursue

an action for money damages.  *See Kamenesh v. City of Miami*, 772 F. Supp. 583, 593 (S.D. Fla. 1991); *McQuade*, 51 So. 3d at 495; *Bailey v. Bd. of County Comm'rs*, 659 So. 2d 295, 307 (Fla. 1st Dist. Ct. App. 1994); *Cosgrove*, 516 So. 2d at 1127–29.  Plaintiff argues that those cases were decided under a previous version of § 112.534, which expressly provided that a correctional officer could apply directly to the state circuit court for an injunction to restrain a correctional agency's noncompliance with LEOBOR.  *See* Fla. Stat. § 112.534 (1985) (amended 1993, 2000, 2003, 2009, 2011).  The provision regarding the right to injunctive relief was deleted by amendments to § 112.534 enacted in 2009.  2009 Fla. Sess. Law Serv. Ch. 2009-200 (West). Those amendments also added far more detail to the administrative procedures to be followed upon receipt of a complaint filed pursuant to LEOBOR.  *See id.*  Contrary to Plaintiff's argument, these amendments do not affect the analysis.  If anything, the amendments may have narrowed the relief obtainable under § 112.534 by eliminating the availability of injunctive relief and by emphasizing that administrative review is the proper remedy.  There is no reason to believe that the amendments were intended to *add* a cause of action for money damages. "Courts should not add additional words to a statute not placed there by the legislature, especially where uncertainty exists as to the intent of the legislature."  *In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Pub. Defender*, 561 So. 2d 1130, 1137 (Fla. 1990).  It is therefore clear that Plaintiff may not pursue a claim for money damages against Defendants DeCicco and Scala for violations of §§ 112.532 and 112.533.  Accordingly, the Court will dismiss Counts Two and Three from the Complaint.

> 2.  *Count Eight Fails to State a Cause of Action under the Whistle-blower's Act against Defendants DeCicco and Scala in their Individual Capacities*

In Count Eight, Plaintiff alleges that Defendants DeCicco and Scala violated Florida's "Whistle-blower's Act", Fla. Stat. §§ 112.3187–112.31895, by taking adverse employment

actions against her in retaliation for her filing of a complaint regarding certain FDOC investigative practices.[3]   Doc. 62, ¶¶ 190–203.   The Whistle-blower's Act was enacted to "prevent agencies … from taking retaliatory action against employees who report any abuse or neglect of duty on the part of a public officer.   The statute provides a cause of action for an employee who suffers adverse personnel action as a result of disclosing the information."   *Ujcic v. City of Apopka*, 581 So. 2d 218, 219 (Fla. 5th Dist. Ct. App. 1991) (internal citations omitted). That cause of action is created in § 112.3187, which provides that aggrieved employees may file a complaint with an appropriate State agency and, upon receiving notice of termination of an investigation by the agency, may either "pursue the administrative remedy available under s. 112.31895 or bring a civil action within 180 days after receipt of the notice."   Fla. Stat. § 112.3187(8)(a); *Ujcic*, 581 So. 2d at 219.   However, § 112.3187 does not provide a cause of action against public officials *in their individual capacity.  Harris v. Dist. Bd. of Trustees of Polk Cmty. Coll.*, 9 F. Supp. 2d 1319, 1328 (M.D. Fla. 1998); *Costa v. Sch. Bd. of Broward County*, 701 So. 2d 414, 416 (Fla. 4th Dist. Ct. App. 1997); *De Armas v. Ross*, 680 So. 2d 1130, 1131 (Fla. 3d Dist. Ct. App. 1996).   Accordingly, the Court will dismiss Count Eight to the extent it is asserted against Defendants DeCicco and Scala in their individual capacities.

### 3. The Remaining Claims Against Defendants DeCicco and Scala in their Official Capacities Are Barred by the Eleventh Amendment

The Court has not expressly ruled on Counts One, Six, Eight, and Fifteen as they pertain to Defendants DeCicco and Scala in their official capacities.   "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's

---

[3] Count Eight purports to state a cause of action under Fla. Stat. § 112.31895.  *See* Doc. 62, p. 47. However, the allegations in Count Eight also assert a violation of § 112.3187, which is the section that creates a cause of action under the Whistle-blower's Act.  *See id.* at 51.   Therefore, the Court will construe Count Eight as pleading a cause of action under that section.   To the extent that Plaintiff asserts that § 112.31895 creates its own cause of action, the Court disagrees.

office.  As such, it is no different from a suit against the State itself."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted).  Accordingly, the Eleventh Amendment bar against seeking damages from a State in federal court "remains in effect when State officials are sued for damages in their official capacity."  *Kentucky v. Graham*, 473 U.S. 159, 170 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity." *Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1429 (11th Cir. 1997) (internal citations omitted).  Here, Plaintiff has not alleged, and the Court is not aware of, a valid abrogation of Florida's Eleventh Amendment immunity from claims under the First Amendment (Count One), Fourteenth Amendment (Counts One and Fifteen), Florida's parental and medical leave statute (Count Six), or Florida's Whistle-blower's Act (Count Eight).  In addition, the Court has already determined in Part III.A.2, *supra*, that Florida has not waived its Eleventh Amendment immunity except for certain tort claims.  Therefore, Plaintiff is barred from seeking money damages from Defendants DeCicco and Scala under Counts One, Six, Eight, and Fifteen.

Nor is injunctive or declaratory relief proper.  As the Court has explained in Part III.A.2, *supra*, *Ex parte Young* provides a narrow exception to the States' Eleventh Amendment immunity in actions where a party is seeking prospective relief against State officials for violations of federal law.  However, the Court has already concluded, at the hearing on the Motions to Dismiss, that the relief sought by Plaintiff is not truly prospective.  *See* Unofficial Transcript, pp. 9, 12–13.  Rather, Plaintiff merely seeks to be restored to the position she was in prior to her termination from the FDOC.  *See id*.  Accordingly, the *Ex parte Young* exception does not apply.  As a result, Counts One, Six, Eight, and Fifteen, to the extent they are asserted

against Defendants DeCicco and Scala in their official capacities, are barred by the Eleventh Amendment and will be dismissed.

## IV.   CONCLUSION

Following the Court's entry of this Order, the only claims remaining in this action will be:  (1) Count One against Defendants DeCicco and Scala in their individual capacities; (2) Count Four against the FDOC; and (3) Count Fifteen against Defendants DeCicco and Scala in their individual capacities.

Accordingly, it is hereby **ORDERED**:

1.   The FDOC's Motion to Dismiss (Doc. 67) is **GRANTED in part** and **DENIED in part**:

   a.   Counts One, Two, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen are **DISMISSED without prejudice** for lack of subject matter jurisdiction.[4]

   b.   The FDOC's Motion to Dismiss is **GRANTED** to the extent it seeks to prevent Plaintiff from pursuing punitive damages on Count Four.

   c.   In all other respects, the FDOC's Motion to Dismiss is **DENIED**.

2.   The Individual Defendants' Motion to Dismiss (Doc. 68) is **GRANTED in part** and **DENIED in part**:

---

[4] "[F]ederal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment." *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001).  Because the Court lacks subject matter jurisdiction over such claims, it has no power to render a judgment on the merits, and must dismiss the claims without prejudice. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234–35 (11th Cir. 2008).

a.      Counts One, Six, Eight, and Fifteen are **DISMISSED without prejudice** for lack of subject matter jurisdiction to the extent they are asserted against Defendants DeCicco and Scala in their official capacities.

b.      As Plaintiff has had three opportunities to assert her claims, Counts Six and Eight are **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted to the extent they are asserted against Defendants DeCicco and Scala in their individual capacities.

c.      As Plaintiff has had three opportunities to assert her claims, Counts Two, Three, Sixteen, and Seventeen are **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

d.      Count Fourteen is **DISMISSED with prejudice** as duplicative.

e.      In all other respects, the Individual Defendants' Motion to Dismiss is **DENIED**.

3.      The Clerk is **DIRECTED** to **terminate** the Secretary of the Florida Department of Corrections as a party to this case.

**DONE** and **ORDERED** in Orlando, Florida on May 13, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties